IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EUGENE TUCKER, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 16 C 2480 |
| AGUSTIN TORRES, MARY JO FAHEY, and CITY OF CHICAGO, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Eugene Tucker has sued Chicago police officers Agustin Torres, Mary Jo Fahey, and the City of Chicago under 42 U.S.C. § 1983, asserting claims of unreasonable seizure and excessive force against the officers and a claim of indemnification under 745 ILCS 10/9-102 against the City. The defendants have moved for summary judgment.

## Facts

Because the defendants have moved for summary judgment, the Court views the evidence in the light most favorable to Tucker and draws reasonable inferences in his favor.

During his deposition, Tucker testified, in summary, as follows. On August 4, 2014, Tucker, a 22-year-old African-American man, was visiting his mother and other family members in the 5500 block of South Wabash in Chicago. After several hours, he left to go to a liquor store located at 57th and State Streets. As Tucker was

approaching the liquor store, he realized that he did not have identification with him. He approached a man outside the star and handed the man ten dollars to buy alcohol. The other man then entered the liquor store. At this point officer Agustin Torres approached Tucker, pushed him against a wall, handcuffed him, and then put his hands into Tucker's pockets. He pulled out a small bag with a half-gram of marijuana. Torres also claimed to find some pills in Tucker's pocket, but Tucker testified that he had no pills.

The officers took Tucker to the police station at 51st Street and Wentworth Avenue, where he was held overnight on charges of possession of cannabis and possession of a controlled substance (the pills). The next morning, Tucker was transferred to the Cook County Jail, where he was held for several days before he was released on bond. The charges against Tucker were nolle prossed about three weeks later by the Cook County State's Attorney's Office.

Officer Fahey testified that she did not observe the hand-to-hand transaction between Tucker and the other man. Nor did she search Tucker; Torres did that.

Officer Torres testified that he and Fahey were driving westbound on 57th Street headed toward State Street when he observed Tucker. Here is what Torres says took place:

> I observed [Tucker] at that point. He was involved with another person. I saw hand-to-hand transaction, at which time I approached [Tucker] for a field interview.
>
> At that time the other subject began to walk award towards a liquor store that's on the southeast corner.
>
> Approached Tucker, interviewed him. At the time of the interview I believed what he was doing was selling cigarettes on the public way at that time.
>
> [question asked]

2

> At that time during the interview Mr. Tucker began to like stiffen up and begins to like avoid me, at which time I conducted a pat down because of his behavior being suspicious to me.
>
> At the time of the pat down he has a purple baggy, which I can see has cannabis protruding from his pocket. At that time I recovered the item, placed him in custody and determined that it was not cigarettes he was selling.

Torres Dep. at 18-19.

> Q: What was the probable cause that you had to arrest Mr. Tucker on August 3, 2014?
>
> A: At that time I physically saw cannabis protruding from his pocket.
>
> …
>
> Q: Did you have reasonable suspicion to approach him before you saw the cannabis?
>
> A: Yes, I did.
>
> Q: Okay. Can you articulate what your reasonable suspicion of Mr. Tucker was before you approached him on August 3, 2014?
>
> A: At that time I observed a hand-to-hand transaction, which I believed was a city charge of certain transaction[s] prohibited on the public way, which I thought was a cigarette. I approached him to generally write a citation.

*Id.* at 29.

> Q: You didn't observe Mr. Tucker take anything out of his pocket before began the hand-to-hand transaction? Is that true?
>
> A: I did not.
>
> Q: Same thing for the other gentleman, you didn't see him take anything out of his pocket before you saw a hand-to-hand transaction, true?
>
> A: I did not.

*Id.* at 39.

## Discussion

In deciding defendants' motion for summary judgment, the Court views the facts in the light most favorable to Tucker, the non-moving party and draws all reasonable inferences in Tucker's favor. *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018). Summary judgment is proper only if there is no genuine dispute regarding any material fact and defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

As ought to be clear from the previous discussion, Tucker and Torres have significantly different versions of the interaction between the two of them. Tucker says that he was immediately arrested—handcuffed and pushed up against the wall—and that his pockets were then searched. Torres, by contrast, says he approached Tucker only to question him and write a citation, patted Tucker down only after he began to behave suspiciously, and arrested him only after he observed and found what he suspected was cannabis. Because the Court is dealing with a motion for summary judgment by defendants, the Court has to view these events consistently with Tucker's testimony, not that of Torres.

### 1. Claim of unreasonable seizure

Defendants argue their summary judgment motion under the scenario that Torres first conducted a *Terry* stop; patted Tucker down and found suspected cannabis; and then arrested Torres for possession. They contend that Torres had reasonable suspicion for the *Terry* stop or alternatively that he is entitled to qualified immunity. They further contend that Torres had probable cause to arrest after patting Tucker down or alternatively is entitled to qualified immunity. And they contend that Torres did not

4

use excessive force or alternatively is entitled to qualified immunity.

The flaw in this approach is that it assumes the accuracy of Torres's testimony about the sequence of events: a *Terry* stop, followed by an arrest. But Tucker testified that things happened differently, and on summary judgment the Court is required to take his testimony as true. So the Court will analyze the case the way Tucker testified it happened.

According to Tucker, when Torres arrived at the scene he immediately arrested and handcuffed Tucker. (Defendants make no argument that, even if one believes Tucker's testimony, the initial encounter was nonetheless a *Terry* stop.) An arrest requires probable cause, which exists if "the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7th Cir. 2013).

A reasonable jury could find that probable cause was lacking. Based on Torres's testimony, he saw something change hands, but it only went one direction: Tucker handed something to the other man. Torres testified that he believed Tucker was selling a loose cigarette, which if true would have violated the law. But Torres does not claim that he saw the other man give Tucker anything—in other words, he did not see events that a reasonable police officer could believe was a sale, that is, an exchange of a cigarette for money or something of value. And Torres himself testified that it is not illegal simply to give someone a cigarette.

To be sure, there are situations in which observation of a one-way handoff would provide probable cause—for example, if a reasonable officer would believe that

5

narcotics were being distributed or a firearm was being handed by one person to another. But the type of hand-off that Torres claims to have observed (not involving an inherently illegal item or one that cannot legally be given by one person to another) would provide probable cause only if he had also seen something being passed the other way—money, for example. Torres does not claim that he saw any such thing, nor do defendants point to any evidence from which an inference could be drawn that a reasonable officer would believe this was what was happening.

The Court notes that even were it to address the matter as a *Terry* stop, summary judgment would be inappropriate. A reasonable jury could find that given what Torres says he saw, he lacked *articulable* reasonable suspicion that Tucker had committed, was committing, or was about to commit a crime but instead had only a hunch. That's not enough for a *Terry* stop, let alone for an arrest. *See Terry v. Ohio*, 392 U.S. 1, 22 (1968); *United States v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018). Torres certainly could have approached Tucker (or the other man) to investigate further—for example, by asking what Tucker had given the other man—but he was not legally entitled to place Tucker under arrest at that point. *See, e.g., People v. Moore*, 286 Ill. App. 3d 649, 653, 676 N.E.2d 700, 704 (1997) (stating, in a similar scenario, that "besides the possibility of a drug buy, this exchange could have merely been the paying off of a bet, splitting the cost of dinner or even a simple shake of hands. . . . [T]here were not enough articulable facts present to warrant [the officer's] attempt to effect a *Terry* stop."). By contrast, in *People v. Clark*, 2014 IL App (1st) 123562-U, 2014 WL 4536733, cited by defendants, the officers saw the two participants exchange items. *See id.* ¶ 5, 2014 WL 4536733, at *1. That is why the court in that case determined that

6

probable cause existed. See id. ¶ 16, 2014 WL 4536733, at *4 ("currency was being exchanged for a narcotic substance").[1]

For largely the same reasons, Torres is not entitled to a finding of qualified immunity on summary judgment regarding the claim of unlawful seizure. As indicated, defendants premise their qualified immunity argument on a factual scenario (the initial encounter as simply an approach to question Tucker, which then ripened into a *Terry* stop) that is genuinely disputed and that a reasonable jury could find simply did not occur. This genuine factual dispute precludes a qualified immunity determination on the basis defendants argue. Defendants make no argument that Torres is entitled to qualified immunity if the initial encounter was not a *Terry* stop but rather an arrest, as a reasonable jury could find. See Defs.' Mem. at 6.

For all of the reasons stated above, Torres is not entitled to summary judgment on count 1, the unlawful seizure claim. Fahey, by contrast, is entitled to summary judgment on this claim, as Tucker has offered no evidence that she participated or assisted in the arrest.

**2.    Claim of excessive force**

Because the Court is required to view the evidence in the light most favorable to Tucker at this stage of the case, defendants are not entitled to summary judgment on count 2, the claim of excessive force. Tucker's version of the events is that, essentially

---

[1] If, at trial, Torres persuades a jury that events unfolded as he said—in other words, starting with a legally justified *Terry* stop—then there is no question that Torres then acquired probable cause permitting him to arrest Tucker, as Tucker concedes that he had cannabis in his pocket. But this is defendants' version of what happened, not Tucker's, and Torres is not entitled to have the case decided on summary judgment based on his version of the events.

7

for no legal reason, Torres shoved him against a wall and handcuffed him. That would be reasonable and justified force for a legal arrest, *see Sow v. Fortville Police Department*, 636 F.3d 293, 304 (7th Cir. 2011) (the "right to make an arrest necessarily carries with it the right to some degree of physical coercion to effect it"), but under the scenario as described by Torres—which, again, the Court must take as true for purposes of the motion for summary judgment—a reasonable jury could find *any* use of force, no matter how minimal, to be unwarranted.

Fahey, by contrast, is entitled to summary judgment. There is no evidence that she used any force on Tucker, and given the very brief application of force, no reasonable jury could find that Fahey had, and passed up, a realistic opportunity to intervene to prevent the use of force. *See Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012).

## Conclusion

The Court grants defendants' motion for summary judgment in part and denies it in part. Specifically, the Court enters summary judgment in favor of defendant Mary Jo Fahey but denies the motion as to defendant Agustin Torres. The City of Chicago remains as a defendant as an indemnitor of Torres under 745 ILCS 10/9-102. The case is set for a status hearing on November 28, 2018 at 9:30 a.m. to set a trial date and discuss the possibility of settlement. Plaintiff Eugene Tucker is directed to appear at the status hearing along with his attorney so that the Court can engage in a meaningful discussion about the possibility of settlement.

Date: November 19, 2018

                                                MATTHEW F. KENNELLY
                                                United States District Judge